UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE LYONS, | No. 2:96-cv-00784-GEB-GGH |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| THEODORE WHITE, et al., | |
| Respondents. | |

Petitioner moves for relief from this court's order and judgment entered February 28, 2001, denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court will recommend that plaintiff's motion be dismissed as successive.

PROCEDURAL BACKGROUND

The court summarized the procedural history surrounding this matter in the following terms in its January 26, 2001, findings and recommendations:

> Petitioner was convicted on April 24, 1989, and petitioner was sentenced to 216 years with a consecutive life sentence. On December 10, 1990, the Third District Court of Appeal affirmed petitioner's conviction. On March 14, 1991, the California Supreme Court denied review on direct appeal. Petitioner then filed a petition with the Superior Court which was denied on January 30, 1992. He filed another petition with the Superior Court which was again denied on April 6, 1993. On April 2, 1992, petitioner filed a petition with the California Supreme Court which was denied on May 27, 1992. Petitioner filed another petition with the state supreme court on June 8, 1992, which was denied on September 30,

1

1992. Petitioner's August 31, 1993, petition to the California Supreme Court was denied on November 23, 1993.

Petitioner initially filed a pro se federal petition on May 12, 1994, in Lyons v. White, No. CIV S-94-0731 GEB GGH P. The Federal Defender was appointed to represent petitioner on June 14, 1994. That petition was later dismissed without prejudice for exhaustion purposes on November 14, 1995, by stipulation.

On April 18, 1996, in an apparently preemptive response to the new standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Federal Defender filed a new federal habeas petition for petitioner in this action, but was not appointed to represent petitioner. This petition was signed only by the Federal Defender who was not yet appointed to the case. The signature line for petitioner was left blank. On July 8, 1996, a petition was finally filed which contained petitioner's signature. Also on July 8, 1996, the Federal Defender filed a request for appointment of counsel nunc pro tunc, to date back to the April 18th petition. That request was denied by order on August 22, 1996, at the same time the court recommended that the petition be dismissed as a mixed petition, for lack of exhaustion. That recommendation was affirmed by district court order on November 27, 1996.

The Federal Defender continued to act on petitioner's behalf without having been appointed, pursuing an appeal in the Ninth Circuit. He was ultimately appointed as counsel in the Ninth Circuit on April 11, 1997. The appeal was limited to the issue of whether the district court appropriately dismissed the petition sua sponte. Mr. Broderick then advised petitioner to exhaust the claims which had been exhausted in the April, 1996, petition, assuming that this second federal petition contained all of the possible claims. Those claims were exhausted on May 28, 1997, when the California Supreme Court denied the petition filed on March 14, 1997. On April 27, 1998, the Ninth Circuit vacated the district court's order of dismissal and remanded the case for further proceedings, finding that the exhaustion requirement is met if state remedies are exhausted while an appeal is pending.

On June 15, 1998, petitioner filed a first amended petition, through the Federal Defender. On December 4, 1998, respondent filed an answer to the first amended (federal) petition. On December 21, 1998, petitioner filed a traverse, as well as a document entitled "supplemental traverse."

Unbeknownst to respondent, petitioner's counsel (Broderick) discovered when preparing the first amended petition that no Assistant Federal Defender previously assigned to represent petitioner had up to this point read the entire state court file. Attorney Broderick's reading of the file discovered new claims that assertedly "jumped out" at him, so patent were they. As a result, a new state habeas petition was filed on July 30, 1998, identifying the new claims. Thereafter, petitioner sought to have this court stay the operative first amended petition in order to allow the new exhaustion process to terminate. Due to the fact that the state court

2

Case 2:96-cv-00784-GEB-GGH   Document 98   Filed 02/02/16   Page 3 of 8

> acted expeditiously in denying the new state petition mooting the stay issue, the undersigned vacated his recommendation to the district court not to stay the case. Petitioner lodged a second amended petition on April 28, 1999, containing 15 claims, all of which were exhausted. After objection by respondent, petitioner filed a motion for leave to file this second amended petition on May 11, 1999, which on August 11, 1999, the court granted in part and denied in part, eliminating five of the fifteen claims alleged in the second amended petition, claims 1, 2, 5, 6, and 7. Respondent was directed to file a supplemental answer with regard to claims 3 and 4 in the second amended petition. Petitioner filed the second amended petition on August 11, 1999. . . .
>
> Respondent filed the supplemental answer on September 8, 1999. On September 10, 1999, petitioner filed a motion before the district judge for reconsideration of the magistrate judge's order of August 11, 1999. On December 2, 1999, the district judge denied petitioner's motion. Petitioner filed his traverse on January 18, 2000, and a change of address on January 27, 2000.

ECF No. 63 at 3–5. On January 26, 2001, the undersigned recommended that the second amended petition be denied. ECF No. 63. The court adopted the undersigned's recommendation on February 28, 2001. ECF No. 65. On March 28, 2001, petitioner filed a notice of appeal. ECF No. 68. On May 31, 2002, the Ninth Circuit issued an order affirming this court's dismissal. ECF No. 71.

On August 10, 2006, petitioner filed a motion for relief from judgment under Rule 60(b). ECF No. 72. On March 14, 2007, the undersigned recommended that petitioner's motion be dismissed to the extent that it was a successive petition, and denied to the extent that it was a Rule 60(b) motion. ECF No. 74. The presiding district judge adopted the undersigned's recommendation on May 1, 2007. ECF No. 77. On September 11, 2009, petitioner filed a second Rule 60 motion. ECF No. 79. On December 16, 2009, the undersigned again recommended that petitioner's motion be dismissed as successive petition. ECF No. 80. On January 21, 2010, the presiding district judge again adopted the undersigned's findings and recommendations. ECF No. 82. On January 28, 2010, petitioner filed a notice of appeal and request for certificate of appealability. ECF No. 83. The court declined to issue a certificate of appealability on March 5, 2010. ECF No. 84. On October 20, 2011, the Ninth Circuit also denied petitioner's request for a certificate of appealability. ECF No. 90.

3

On September 15, 2015, petitioner filed a self-styled motion for relief from judgment pursuant to Rule 60(b)(3). ECF No. 91. Respondent filed an opposition on October 1, 2015, ECF No. 93, and petitioner filed a reply on October 15, 2015, ECF No. 94. Respondent then filed an unauthorized sur-reply on October 20, 2015, ECF No. 95, which was followed by objections from petitioner on November 4, 2015, ECF No. 96, and December 7, 2015, ECF No. 97.

## LEGAL BACKGROUND

While the habeas restrictions established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "did not expressly circumscribe the operation of Rule 60(b)," they "are made indirectly relevant . . . by the fact that Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings . . . only to the extent that [it is] not inconsistent with applicable federal statutory provisions and rules." Gonzalez v. Crosby, 545 U.S. 524, 529 (2005) (alteration in original) (footnote omitted) (internal quotation marks omitted). Accordingly, habeas corpus petitioners cannot "utilize a Rule 60(b) motion to make an end-run around the requirements of AEDPA" or to otherwise circumvent that statute's restrictions on second or successive habeas corpus petitions. Calderon v. Thompson, 523 U.S. 538, 547 (1998) (internal quotation marks omitted); see also United States v. Buenrostro, 638 F.3d 720, 722 (9th Cir. 2011) (per curiam) ("[A] state prisoner may not rely on Rule 60(b) to raise a new claim in federal habeas proceedings that would otherwise be barred as second or successive under § 2254.").

AEDPA generally limits a petitioner to one federal habeas corpus motion and precludes "second or successive" habeas corpus petitions unless the petitioner meets certain narrow requirements. See 28 U.S.C. § 2244(b). The statute provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless" it "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or on newly discovered facts that show a high probability of actual innocence. Id. § 2244(b)(2)(A)–(B); see also Gonzalez, 545 U.S. at 529–30.

Because of the difficulty of meeting this standard, habeas corpus petitioners at times have characterized their second or successive habeas corpus petitions as Rule 60(b) motions. But

"[w]hen a Rule 60(b) motion is actually a disguised second or successive § 225[4] motion, it must meet the criteria set forth in" § 2244(b)(2). See United States v. Washington, 653 F.3d 1057, 1059-60 (9th Cir. 2011) (discussing a second or successive 28 U.S.C. § 2255 petition); see also Gonzalez, 545 U.S. at 528.

A legitimate Rule 60(b) motion "attacks . . . some defect in the integrity of the federal habeas proceedings," while a second or successive habeas corpus petition "is a filing that contains one or more 'claims,'" defined as "asserted federal bas[e]s for relief from a state court's judgment of conviction." Gonzalez, 545 U.S. at 532. Put another way, a motion that does not attack "the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably" raises a claim that takes it outside the bounds of Rule 60(b) and within the scope of AEDPA's limitations on second or successive habeas corpus petitions. Id. at 532 n.5.

## ANALYSIS

The court should dismiss petitioner's motion to the extent it is a successive petition and deny it to the extent it is a Rule 60(b) motion. To show a defect in the integrity of his federal habeas proceeding, petitioner must point to something that happened during that proceeding that rendered its outcome suspect. As the court explains in more detail below, all of plaintiff's allegations relate to his state court proceedings. What's more, even if petitioner's allegations could be construed as relating to his federal habeas proceedings, the motion would have to be denied because those allegations would plainly be insufficient to show fraud upon the court.

Plaintiff requests that the court set aside its February 28, 2001, order denying plaintiff's writ of habeas corpus. ECF No. 91 at 28. That petition claimed that "the prosecution engaged in vindictive prosecution by charging more serious offenses when petitioner refused a two-year offer and demanded his constitutional right to a preliminary hearing." ECF No. 63 at 2. According to petitioner, on August 4, 1988, the prosecution filed a complaint in his underlying criminal case charging him with one count of assault with a deadly weapon pursuant to California Penal Code § 245(a)(1), and one count of assault with a deadly weapon pursuant to California Penal Code § 245(a)(2). Id. at 22–23. At some point, perhaps before petitioner was charged, perhaps after, petitioner spoke with the prosecutor regarding a potential plea deal. Id. The prosecutor told

1 petitioner that if he did not accept a plea deal he would receive an additional charge of mayhem,
2 along with great bodily injury enhancements. Id. Petitioner refused, however, to accept the plea
3 deal. Id.

4 At some point after the negotiations between the prosecutor and petitioner took place, a
5 second prosecutor not involved in the case spoke to an incarcerated informant who claimed that
6 petitioner was intimidating a rape victim via phone from the county jail. Id. In light of that
7 information the second prosecutor decided to review petitioner's case file, which is when he
8 discovered that petitioner had never been charged with raping the victim he was intimidating. Id.
9 The second prosecutor determined that petitioner had been "grossly undercharged" and
10 accordingly, decided to prosecute the case himself. Id. Petitioner alleged that on November 8,
11 1988, a first amended complaint was then filed charging him with twenty-three sex offense counts
12 and one count of attempted premeditated murder. Id. On December 12, 1988, the information
13 filed against petitioner charged him with thirty-two sex offense counts and one count of attempted
14 premeditated murder. Id. The petition alleged that the complaints charging petitioner with sex
15 offenses were filed vindictively because he had refused the plea deal offered by the first
16 prosecutor, insisting instead on testing the government's evidence. Id.

17 Although petitioner's motion is difficult to decipher at times, it seems that he is alleging
18 respondent committed several instances of fraud upon the court. All of these allegations revolve
19 around respondent's explanation for why additional sex offense charges were brought against
20 petitioner in the amended complaints. Specifically, petitioner attacks respondent's statements that
21 the second prosecutor received word from an informant that petitioner had been threatening a
22 rape victim not to come forward from prison. First, petitioner alleges that by failing to reveal this
23 information in state court, respondent prevented petitioner from "fully and fairly presenting his
24 case." ECF No. 91 at 20. Second, petitioner alleges that respondent used the aforementioned
25 information in this court, even though it should have been revealed earlier. Id. at 24. In addition,
26 petitioner claims that the information presented was false. Id. at 25. Finally, petitioner alleges
27 that his own attorney committed fraud upon the court by failing to challenge respondent's use of
28 the aforementioned information in this court. Id. at 27. All in all, these allegations boil down to

1  the claim that by not revealing this information earlier, in the underlying state court case,

2  respondent has committed fraud upon the court.

3        There are a number of problems with petitioner's claims. First, even though petitioner

4  frames some of his fraud upon the court claims as occurring in this court they are, in fact, directed

5  at the state court that presided over his underlying conviction. This is because his claims,

6  regardless of how they are phrased, effectively boil down to the assertion that the state should

7  have revealed the information it received from the informant during his state court proceedings.

8  Motions that include claims attacking petitioner's underlying state court conviction are second

9  and successive petitions, not legitimate Rule 60 motions. Jones v. Ryan, 733 F.3d 825, 834 (9th

10  Cir. 2013). What's more, even if petitioner's motion could be construed as alleging fraud upon

11  this court during the court of his habeas proceedings, the allegations are nowhere close to

12  sufficient. The Ninth Circuit has explained that "[f]raud on the court must involve an

13  unconscionable plan or scheme which is designed to improperly influence the court in its

14  decision." Abatti v. Comm'r, 859 F.2d 115, 118 (9th Cir. 1988) (internal quotation marks

15  omitted). Petitioner's allegation respondent failed to reveal information that, far from

16  exculpatory, actually *implicates petitioner further* in the crimes he was convicted of cannot

17  possibly constitute such a scheme against the court.

18        Accordingly, the court finds that petitioner has not properly alleged the existence of any

19  fraudulent plan or scheme that could warrant relief under Rule 60(b) and it will recommend his

20  motion be dismissed to the extent it is a successive petition and denied to the extent it is a Rule

21  60(b) motion.

22        CONCLUSION

23        In light of the foregoing, THE COURT HEREBY RECOMMENDS that petitioner's

24  motion for relief from judgment pursuant to Rule 60(b), ECF No. 91, be DISMISSED to the

25  extent that it is a successive petition, and DENIED to the extent that it is a Rule 60(b) motion.

26        These findings and recommendations are submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days

28  after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3  shall be served and filed within ten days after service of the objections.  The parties are advised
4  that failure to file objections within the specified time may waive the right to appeal the District
5  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 2, 2016

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE

/GGH17; lyon784.recon